[No. 12609. Department Two. November 17, 1915.]

ANNIE L. SCHLUMPF et al., Respondents, v. THE CITY OF SEATTLE et al., Appellants.[1]

INJUNCTION — BUILDING ORDINANCES — REASONABLENESS — POLICE POWER—JURISDICTION. The courts will not enjoin the enforcement of a building ordinance as an unreasonable exercise of the police power, where it was not unreasonable per se, merely because the owner, a short time previously, at considerable expense, had complied with existing requirements, and conditions had not changed.

Appeal from a judgment of the superior court for King county, Humphries, J., entered October 7, 1914, in favor of the plaintiffs, in an action for an injunction, tried to the court. Reversed.

James E. Bradford and William B. Allison, for appellants.
Brightman, Halverstadt & Tennant, for respondents.

MORRIS, C. J.—In July, 1913, the city of Seattle enacted ordinance No. 31,578, commonly known as the "Building Code," which by its terms became operative as to lodging houses six months after its approval, or early in 1914. The various respondents own lodging houses in Seattle and were, in February and March of that year, notified by the city to make their respective houses conform to the requirements of the ordinance. In April, five suits were begun by the re-

[1]Reported in 152 Pac. 673.

spondents, seeking to permanently enjoin the enforcement of
the ordinance. Two of these were dismissed on being called
for trial, and the other three proceeded to a hearing before
the court without a jury, with the result that injunctions were
issued, permanently enjoining the city from interfering with
the respondents' lodging houses in any manner, or enforcing
the ordinance as to them. A separate judgment was entered
in each case and separate appeals taken, but as the cases
involve similar situations, they are on this appeal, by stipu-
lation, considered as one case. For this reason we will discuss
the evidence only so far as it affects the Cape Nome lodging
house.

The undisputed evidence shows that the Harmon estate,
of which the respondent Annie P. Schlumpf is administratrix,
has owned the New England Hotel building for a number of
years, and that the respondent Weir is lessee of the entire
building, and respondent Strom sublessee of the basement in
which the lodging house is situated. On February 13, 1912,
a year and a half prior to the passage of ordinance No.
31,578, the respondents Schlumpf and Weir were notified by
the proper city authorities that the use of the basement as a
lodging house was unsafe, and that its continued use for that
purpose would not be permitted until certain alterations
were made. Negotiations were entered into between the re-
spondents and the city officials looking to the improvement
of the place, and plans for the alterations, drawn by respond-
ents' architect, were approved by the city. The respondents
then entered upon the work, which was inspected and ap-
proved by the city from time to time, and which, when finally
completed and approved, cost respondent Weir $1,200, and
necessitated the closing of the lodging house for several
months. The alterations were completed and the work finally
approved approximately six months prior to the passage of
ordinance No. 31,578, and a year before the respondents were
notified to make their premises conform to its requirements.

While it does not affirmatively appear that the alterations made in 1912 were ordered to make the place comply with the building code then in force, we may, for the purpose of argument, assume that such is the fact.

The respondents introduced the testimony of Dr. J. E. Crichton, former health officer of the city, that he had inspected the lodging house after the repairs were completed, and that the place was well ventilated and wholesome and a fit place for human habitation. Respondent Weir likewise testified that the place was sanitary and no complaints had been made; and one Mendel, an architect, testified that, to make the basement conform to the requirements of the ordinance, it would be necessary to raise the building, which might not be possible because of the danger of the building falling to pieces; but, if possible, the cost would approximate $3,500. No findings or conclusions were made, but judgments were entered as heretofore noted.

Appellants construe the decision of the trial court as holding that the city, having once exercised its police power on the regulation of lodging houses and compelled a compliance with the regulations promulgated by that exercise, its power on that subject is exhausted, and all persons who have complied with the regulations established have a vested right in the business which has so been made to conform, which vested right cannot be taken away by a subsequent exercise of the police power on the same subject-matter. The respondents, on the other hand, construe the decision as a holding that, under the circumstances recited, the action of the city council in passing the ordinance, and of the city officials in threatening to enforce it against them, was an unreasonable exercise of the police power and, under the circumstances shown by the evidence, an unwarranted interference with their property rights.

The respondents argue that no change in conditions was shown to have occurred between the time the alterations were made and the enactment of the new building code, necessitat-

ing the remodeling, to make fit for habitation, of a lodging house found only six months previously to be suitable for that purpose; and that to allow new regulations to be passed and enforced whenever the city council saw fit would subject property owners to the "sporadic impulses" of the council, greatly to their detriment. The extent of respondents' showing is, however, only that they were ordered to comply with a regulation which they do not attack as inherently unreasonable, a regulation not assailed as invalid, but one whose enforcement it is sought to restrain because that enforcement will work a hardship upon them in their business. They do not contend that the city was without power to order the alterations made in 1912, nor that it lacked power to pass the ordinance under consideration, nor that the ordinance attacked is in itself unreasonable.

Our conception of respondents' position is that they were merely unfortunately affected by changing legislation, and not that they are affected by legislation inherently unreasonable. While the courts have the generally recognized power to declare unreasonable, under certain circumstances, the enactments of a city council in pursuance of its police power (Freund, Police Power, § 33), they cannot, as between the city and an individual, declare that an enactment otherwise valid is unenforceable because of some hardships it will impose on the individual. Large investments made today may be jeopardized by the legislation of tomorrow; property acquired in the expectation of the continuation of present law may become worthless through changes made over night; the legitimate business of this week may be a nuisance of next; yet the courts, finding the law itself a valid exercise of the power reposed in the legislative body and not unreasonable *per se*, cannot restrain its enforcement because that enforcement may result in hardship to the individual. Such arguments may properly be addressed to the legislative body itself as grounds for refusing to pass the law, but the courts are powerless to consider them. It follows that the ordinance,

not having been shown to be invalid in itself, its enforcement
cannot be enjoined on the grounds urged, and the judgment
is therefore reversed, with directions to dissolve the injunc-
tions.

MAIN, ELLIS, and FULLERTON, JJ., concur.